Good morning, Your Honors, and may it please the Court, my name is Brandon Boxer on behalf of Appellant FCA, and I would like to reserve five minutes for rebuttal. In Henry Schein, the Supreme Court unanimously explained that if a valid contract exists and if the agreement has a delegation clause, then the Court may not resolve an arbitrability dispute. That rule resolves this appeal. But the parties in Schein were the same parties to the contract, and that's not the case here, so why should it apply? Well, that's not correct, Judge Freeland. If you read Henry Schein, the statement of facts, Henry Schein, the company that was seeking to enforce the arbitration agreement, was a non-signatory. It was a successor in interest to one of the parties that had signed the agreement. Okay, thank you for clarifying that, but still, I don't think you have a successor in interest here, do you? We do not, but successor in interest is one of those traditional state law doctrines that allow a non-signatory to enforce an arbitration clause against a signatory, and we know from other Supreme Court cases, such as Arthur Anderson and GE Energy Power, that non-signatories can compel signatories to arbitration. And so the fact that FCA is not a signatory to the arbitration agreement doesn't affect the analysis. It certainly didn't in Henry Schein that it wasn't non-signatory. But don't we have to look at the contract language to figure out who is a party or who can be able to enforce the agreement? Because this is limited to you and us, or our employees, agents, successors, or assigns, and I don't believe that your client would fall into those categories. I'll say a couple things to that, Judge Schreier. One, the delegation clause has no such language. That language, that plaintiff stressed in their brief, appears in other parts of the The delegation clause has no you, we, us dealership. It simply says also, to the extent allowed by law, the validity, scope, and interpretation of this agreement is to be decided by arbitration. And we know from cases like Rana Center that delegation clauses are essentially severable mini-arbitration agreements, actually like how Judge Friedland put it in Karamark. Delegation clauses are essentially a mini-arbitration agreement. Or as Holly Gallagher case, another Ninth Circuit case said, delegation clauses are essentially severable mini-agreements. And so we have to look at the enforceability or the language of the delegation clause to determine But if you pull that out, what is the limiting principle? I mean, so if you sue me for a car crash and I look at your life and figure out that you have an arbitration agreement with your cell phone provider that has a delegation clause, can I say, I want to invoke that delegation clause and take this arbitration and now we're going to litigate our car crash in arbitration until someone decides whether that's under your cell phone provider? The answer is yes. And I would point the court to Henry Schein. But that makes no sense, does it? So you're saying anyone who has any arbitration agreement with anyone can be brought to arbitration because of their delegation clause, even if it's totally unrelated? I would say yes, under Henry Schein, which again, did away with the holy groundless exception, which was essentially what you're saying. If it's wholly groundless, how can it possibly be enforced? And the Supreme Court said, under Section 2 of the FAA, it's not our ground to carve out exceptions to the enforceability. And I would also direct the court to sort of the bottom third of the Henry Schein opinion, which dealt exactly with that policy concern, where the party that was seeking to continue the wholly groundless exception said, look, this is going to lead to a bunch of frivolous motions to propel arbitration. They're going to be all over the place. And the Supreme Court said, well, A, that's overstated. There's no evidence of that happening. And if you look at other courts that had rejected the wholly groundless exception, there was no evidence of those sort of frivolous, all out of control motions to propel being filed. And if the arbitrators have tools at their dispensal, and again, Henry Schein addressed that, if it is truly frivolous, then they can impose sanctions and courts, of course, can do the same thing. But if arbitration, if the reason we compel arbitration is because of the voluntary contract that people form to go to arbitration, how is there any plausible idea that anyone has formed a contract in that kind of scenario? Well, there is a contract, and I think that's where I would go back to the Arthur Anderson line of cases and the GE power, where it says third parties can enforce. We have a contract here. We know there's a contract. FCA has never argued that we are a party to the contract or a signatory to the contract. But we know that non-signatories can enforce arbitration agreements, and FCA is a non-signatory seeking to enforce the arbitration agreement that plaintiff entered into with the dealership. And so there are state law doctrines that allow this sort of thing to happen for non-signatories to enforce. The Supreme Court has reminded us many times. And that's all that's happening here. So the question, if you look at the language in Henry Schein And what is the state law doctrine that you think allows you to do this here? So in our briefs, we argued equitable estoppel, which I think is much more difficult now given the four mortal warranty cases. But we also argued third party beneficiary doctrine, and we also made some plain language arguments there. But those reaching the merits of those arguments are not for the courts to reach because of the delegation clause, which again is not limited to the you and we. Don't we have to reach that issue? Because if you look at Henry Schein, it starts out by saying that the first thing that you have to look at is a question of the contract, the language in the contract. And you've admitted that your client isn't a party to the contract. So the only way that we would be able to find that it was binding, that there should be arbitration, should go to arbitration, is if you're able to look at one of these other doctrines. And isn't that something that the court would need to do? Because they're not a party under the contract itself. I would say no, because of the delegation clause. It sends all those scope and interpretation questions to an arbitrator. And if you kind of follow out that line of reasoning that a non-party cannot enforce the delegation clause or cannot enforce the agreement, then you've essentially carved out an exception to delegation clauses for non-signatories, which we know from cases like Morgan v. Sundance, courts can't create bespoke rules for arbitration. And again, going back to GE Energy Power and Arthur Anderson, third parties can't enforce arbitration agreements. I guess the question is, who decides whether the third party can enforce, who applies those doctrines? And our position is that because of the delegation clause, that's a question for an arbitrator and not for the court. And concluding otherwise would essentially take that entire category of arbitrability disputes away from the arbitrator in violation of the delegation clause, which again here has no such limiting language as the you and the we and the us that appears in the other portions of the agreement. I'm not sure I understood. I apologize. The answer to Judge Friedland's question about she has a contract with her cell phone provider that has an arbitration clause and you have a dispute with her under a different contract, you can invoke her contract with the cell phone person to determine whether your contract with her dealing with her roof is arbitrable or not? If the two prerequisites of Henry Scheiner are met, then yes. If there's a valid arbitration agreement and it has a delegation clause. The analysis ends. For any contract that she has with anybody that has a valid arbitration clause with a third party can invoke. I don't see how Henry Schein has anything to do with that. Henry Schein dealt with this limited exception for the courts deciding that it's groundless so we don't have to pay attention to it. That sounds very similar to the question that I'm being asked is what is this ridiculous frivolous hypothetical, right? There's no way that applies. That's the holy groundless exception. Isn't the holy groundless about whether the dispute is the right type of dispute, not whether the parties had a contract? Henry Schein said that if there is an arbitration agreement that's valid, which is a question the court can always decide. But isn't part of that question whether it's between these parties even plausibly? No. Because what does it mean to have an agreement if it's not the right people agreeing? Well, I would say, again, going back to those other Supreme Court cases that say non-signatories, non-parties can't enforce arbitration. But only when they have some standing to do so, when there's some plausible way that they're connected. And you're trying to take out that piece. No, we're not trying to take it away at all. What we're saying is the arbitrator has to decide that piece because of the delegation. But the arbitrator has to decide whether it's a type of dispute within the agreement, not whether there is an agreement, which has to do with who the parties are. I agree that the threshold question of is there a valid arbitration agreement, that is for the court to decide. But adding that additional layer of between the non-signatory and signatory, if that's the question for the court, then that goes beyond the is there a valid arbitration agreement question. Because then you're deciding these state law doctrines, whether they apply, how they apply, does the agreement reach the non-signatories. And you would be essentially carving out that entire category of enforceability rights from the scope of a delegation clause or an arbitration agreement as a matter of law by saying arbitrators cannot decide these questions if the non-signatory, the party seeking enforcement, was not a party. And we know that's wrong under GE, Electric Power, and Arthur Anderson, which said non-signatories can enforce arbitration agreements. But they don't say and courts don't get to decide that. Because whether there's a valid agreement, if you can point to any case that says we let the arbitrator decide whether there's a valid agreement between these parties, I don't know of a case that says that. Right. I agree with that. Because that first step, I wouldn't agree with between these parties. But if you have an arbitration agreement, which means it has to be binding on between these parties. Well, that between these parties step is the one I don't think the law goes as far. Because if that were the question for the court, then the arbitrator could never decide the enforceability by a non-signatory. And that's the, if you add that to the issue. Well, the arbitrator could still decide whether the contract that the third party is enforcing covers this type of dispute. But it couldn't decide whether the third party gets the stand in the shoes of the agreeing parties. It's not like it would take away everything from the arbitrator, but it would take away whether this person trying to invoke arbitration is plausibly part of this agreement. I see. Right. And I'm not aware of, other than the Kramer line of precedence, I'm not aware of there being a rule that says delegation clauses, that would essentially render the delegation clause superfluous for purposes of third parties. And that was the reason. Well, not entirely. That's what I'm saying. There would still be a role. It would be, if the third party can invoke the contract, the arbitrator gets to decide whether this type of warranty issue is part of this type of contract. What was sent to arbitration. But there would still be topics for the arbitrator to decide about the scope of the arbitration agreement. But who has the arbitration agreement would be decided by the court. Can you point to any case that says that way of understanding it is wrong? Well, not from this, not from this circuit, but I would point to the decisions of other circuits, the sixth, the eighth, the 10th, who have all said that would render this, the delegation clause superfluous, like the Blanton decision said that that exact thing that construing the delegation clause that way would, would mean that essentially the court already answers the question that has been delegated. What about footnote one in Blanton that says the question, whether the non-signatory had any right to enforce the delegation provision was a distinct question, not before the court? Well, then I would also, then I would point to Swigger, which dealt with a similar issue. Becker, which pointed to a similar issue. In Swigger, I think the plaintiffs hadn't challenged the enforcement of the delegation clause. Right. Well, plaintiffs here have challenging enforce, enforcement of the delegation clause, but well, I wouldn't say challenging enforceability. What they've said is that FCA cannot enforce it as a non-signatory. Right. And that's what had not happened in Swigger. Right. Well, then I would, I would try Eckert, which would be a decision from the eighth circuit, which had a similar issue of non-signatory seeking enforcement. And then also the Casa Arena case comes to mind from the 10th circuit. So I think wasn't an Eckert, the party, a successor though, or a signee, right? Which again is one of those doctrines that allow a non-signatory to enforce an arbitration. But the court decided they were, right? They could enforce. The court said you're an assignee, so it's okay. But here we can't say you're an assignee because you haven't pointed to any state law doctrine that would let us do that. We're not, not an assignee, but we have pointed to other state law doctrines in our briefs like equitable stop, which again, I'm putting aside third-party beneficiary, and we raised a plain language argument. So those, so if the court decides. But if we were following Eckert, wouldn't we decide whether you were right about those state law doctrines? Yeah. And we think that that would be, we would, we would prevail under that because we have those, those arguments. If the court reaches that question, instead of sending it to arbitration. All right. Oh, right. You're almost out of time. Let's save the rest of your time for rebuttal. Thank you. Thank you, your honors. And may it please the court. I'm Mark Chalice of the Leif Cabraser Law Firm here on behalf of the plaintiffs. So I'd like to start out with some basic principles. First, it's a fundamental principle that arbitration is a matter of contract. These are basic principles from the United States Supreme Court. Second, the United States Supreme Court has said that it is clear from our precedents and the contractual nature of arbitration that parties may specify with whom they choose to arbitrate their disputes. And the third basic principle, nothing in the Federal Arbitration Act authorizes a court to compel arbitration of any issue or by any party that are not already covered in the  Those are the basic principles. It is also a basic principle that state law determines whether non-signatory to an agreement containing an arbitration clause may compel arbitration. So turning to the case at bar, the contracted issue here is between Mr. Olson and his dealership, AutoNation. FCA is not a party to the contract. Mr. Olson and FCA haven't agreed to anything, let alone to arbitrate a dispute between them. The contract with the dealership clearly says that an arbitration process can only be invoked by you or we. You is Mr. Olson. We is the dealership. Now it does include the signs and some others, but really those aren't at issue here because FCA is not any of those things. So does it matter that that same language isn't used in the delegation clause? So no, short answer, no, it doesn't matter. And because the state law determines when the interpretation of the arbitration agreement in the Ford warranty cases, they address that exact issue in that exact argument. And what the California Supreme Court said there is the third party language in the arbitration clause means that if a buyer sues a dealer based on the condition of the vehicle, the dealer can elect to arbitrate the claim. The sales contract says nothing of binding the purchaser to arbitrate with a universe of unnamed third parties. And in that context, what they said is you must look at the agreement as a whole. And you can't pull out one sentence and say the agreement says you only have to arbitrate you or we. But there's one sentence here that alludes to other parties or doesn't specifically restrict it to you or we, and therefore it remakes the contract. They said no, you have to look at that as a whole. And if you look at the contract as a whole, it is clear that sentence starts with also. You know, it doesn't say this is a completely new subject. It is in the context of you and we, you and we, you and we, also, and then it goes on to say the delegation issue. So it is not a separate provision, it is not a separate paragraph, it is not a separate notion. It must be read in the context in which it was written. Can you help me? I'm trying to figure out what's at stake here. You're representing a class of what, of purchasers or renters or something of this car, automobile that has allegedly a defect. So how big is, just curious, how big is this class? They're about 200,000 California purchasers or laces. And right, the context that we come here in is this case was filed over six years ago. And it was a victim in part of COVID, it was also a victim in part of the judicial emergency in the Eastern District of California where they just don't have enough judges or didn't have enough judges. Right. So the case sat around for a while. We had a class representative named Sean Alger. He bought his car from the very same dealership, AutoNation, had a almost identical contract, which included the arbitration provision. FCA chose not to move to compel arbitration for six years. Mr. Alger, because of life circumstances, couldn't proceed in the litigation. So Mr. Olson volunteered to step in his spot. Basically the same contract, same dealership, same issue. And at that point, just short of trial, FCA made a strategic decision to move to compel arbitration. The district judge denied that, rightly in our view, and they've appealed it. So that's the context that we're here in. And you have a forfeiture argument that they should have made this argument earlier. But if we agreed with you that they just can't enforce this contract regardless, we don't need to reach the forfeiture? That's true, Your Honor. I don't think that the district court didn't reach the waiver argument. His view was that this contract is very clear. You and we, FCA is not a party to the contract. FCA has no right to even invoke the arbitration provision. So he didn't reach the waiver. So if we were to uphold the district court, this would go back and is it ready to be tried? Yes, ma'am. Okay. It is. So I think the forward warranty case kind of resolves the equitable estoppel argument. I believe it does. Could you address the third party beneficiary argument that was raised? Sure. And I don't know that it certainly hasn't been developed on the appellate level. And I'm not sure it's properly before the court. I think they may have abandoned that. I mean, I guess that's a question for my friend, Mr. Boxer. But there is no indication that they are a third party beneficiary. In the forward warranty cases, there is a parenthetical that specifically referenced third parties that doesn't exist in our case. And what it said is the scope of arbitration, again, it has the you and we. I'm talking about the forward warranty cases. It has the you and we language. It has any claim or dispute between us that arises from any relationship. Now, that's in our agreement. But it goes on to say including any such relationship with third parties who did not sign this contract. That's in the forward warranty. And in that context, the California Supreme Court said that you have to read it all as a holistic unit, the arbitration provision. And even with that language, they are not third party beneficiaries. And in our case, we don't even have that language. So there's really no, I don't think, basis for even suggesting they're a third party beneficiary. Third party beneficiary, I have a little trouble following. Your contract, the buyer's contract was with the seller. With the dealership. Yes, ma'am. The dealership. And this is the manufacturer. And so the argument would be that the manufacturer is the third party beneficiary of the contract between the dealer and the buyer? I think, I don't want to make an argument for them. I think that's their argument. That's their theory. I think that's their theory. I'm frankly not sure what the contours of their argument are. My view is that it's not a meritorious argument. And I'm not sure, when he said there's also plain language arguments, I'm not really sure what that means. But I don't know that any of those have been preserved. In any event, it's been hanging around for six years. It has been hanging around for six years. And this hasn't been developed yet. Okay. Right. That's right. It has been hanging around for a while. So it's our view that the Kramer case is still good law. This court has said that in the Ngo case, which postdates Henry Schein. This court in two unreported decisions, the Jump Trading case and the Gleisinger case, this court has affirmed that that is also still good law. And we would stand on that argument that we've made in our briefs that Kramer still is good law and postdates Henry Schein. For the issues that this court's identified in these questions, we think that Henry Schein does not do what FCA says it does. It is not the game changer that they say it is. Very clear language of that opinion makes it clear that it is limited to a situation where the arbitration parties are the same as the litigation parties. In other words, the litigation parties have a binding arbitration agreement between themselves. And only then do you get into the question of wholly groundless and how it applies or whether it applies or whether it's a viable doctrine under the FAA. The antecedent question, have these parties agreed? What have these parties agreed to is one for the court to decide. It's very clear on the contract language here that FCA and Ms. Raulston have not agreed to anything, let alone have they agreed to arbitrate their disputes. So, unless the court has any questions, I think I'll leave it there. Thank you. Thank you. Let's put two minutes on the clock for rebuttal, please. Okay. Just a few, just a few things. One, there was a suggestion of waiver of arbitration rights. And the key thing on the waiver question is that this is a new plaintiff. The plaintiff is not appointed as the class representative. Has not been appointed. It's a new plaintiff that came in six years later. Within 18 days, we located the arbitration agreement for this plaintiff and we moved to compel arbitration of this plaintiff. As we know from Morgan v. Sundance, waiver is the intentional relinquishment of a known right. Soon as FCA knew that it had a right to compel arbitration as to this plaintiff, it promptly moved to compel arbitration. It was the first filing that FCA made as to whenever the amenity complaint was filed adding Mr. Olson as the plaintiff. Are you saying that the original plaintiff didn't have an arbitration clause? He did have an arbitration clause. It was different than the arbitration clause here. And the delegation clause in that plaintiff's arbitration provision is also quite different. So if you compare ER67 to FER7, those are the two arbitration agreements and the language is different. But I'm not sure, even if the language were identical, I don't think it would make a difference because a party doesn't waive arbitration rights as to the language of some agreement. It waives arbitration rights as to an individual. So it doesn't really matter if the language is the same or not. What matters is the right to compel to a particular individual. There was a brief mention of the Nego case and Gleisinger case. We addressed those in our briefing. Of course, they did not resolve the question that we've raised here about whether Henry Schein controls. And I would also note that a lot of the cases that plaintiffs point to and rely on are Ninth Circuit precedents. And the cases that we rely on are Henry Schein and Renner Center and other Supreme Court cases. And I think that difference, if you do nothing else about this case, that difference should help show you the irreconcilability. Can I just ask for a second? If we disagree with you about who gets to decide whether your client can invoke this arbitration agreement and we have to look at the state law doctrines as you're saying, have you briefed them to us other than the one that is foreclosed now by the California Supreme Court? On page 38 of our brief, we do have a discussion about if the district court correctly reached this question, here's why it erred. So we would point to those arguments, rely on those arguments if the court reaches that question as well. Thank you for your time, Your Honors. Thank you. Thank you both sides for the helpful arguments. This case is submitted. Thank you. Thank you.
judges: SCHROEDER, FRIEDLAND, Schreier